UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 18, 2016

LETTER TO COUNSEL

RE: *Gina Dardozzi v. Carolyn Colvin;*
Civil No. SAG-16-20

Dear Counsel:

On January 5, 2016, Plaintiff Gina Dardozzi petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 18, 19). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Dardozzi filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 22, 2011. (Tr. 12, 157-167). She alleged a disability onset date of April 1, 2007. *Id.* Her claims were denied initially and on reconsideration. (Tr. 93-105). A hearing was held on June 3, 2014, before an Administrative Law Judge ("ALJ"). (Tr. 26-52). Following the hearing, the ALJ determined that Ms. Dardozzi was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 12-24). The Appeals Council denied Ms. Dardozzi's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Dardozzi suffered from the severe impairments of "degenerative disc disease, status post lumbar spine fusion; depressive disorder; and, substance addiction disorder (drugs)." (Tr. 14). Despite these impairments, the ALJ determined that Ms. Dardozzi retained the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to unskilled work." (Tr. 17). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Dardozzi could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 23-24).

Ms. Dardozzi raises five primary arguments on appeal: (1) that the ALJ's holding runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); (2) that the ALJ failed to make a function-by-function assessment of mental RFC consistent with SSR 96-8p; (3) that the ALJ did not pose an adequate hypothetical question to the VE; (4) that

the ALJ did not properly evaluate the medical opinion evidence; and (5) that the ALJ erred in not finding Ms. Dardozzi's testimony as to her symptoms and limitations credible. Pl.'s Mot. 4-5. Each argument lacks merit and is addressed below.

## I. *Mascio* Issue

Ms. Dardozzi argues that the ALJ's opinion violates *Mascio v. Colvin*. Pl.'s Mot. 18-22. In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 et. seq., pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1620a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* at § 404.1620a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* at § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence,

*Dardozzi v. Colvin*
Civil No. SAG-16-20
October 18, 2016
Page 3

or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

In the instant case, the ALJ concluded that Ms. Dardozzi had "the residual functional capacity to perform light work … except that she is limited to unskilled work" with an SVP level of 2. (Tr. 17, 24). With respect to concentration, persistence, or pace, the ALJ cited a 2012 psychological consultative examination that found Ms. Dardozzi was "polite and cooperative," "fully oriented and knew the most recent presidents," and "able to perform serial sevens and simple math calculations in her head." (Tr. 16). But Ms. Dardozzi could only recall "two digits forward and three backward" during serial sevens and "[i]t took two trials for her to repeat three simple words" – two of which she recalled after a delay. *Id*. Nor could Ms. Dardozzi "accurately repeat a simple sentence." *Id*. Although Ms. Dardozzi admitted to smoking marijuana a couple of times a week, as well as smoking marijuana about an hour before the examination, the ALJ concluded that Ms. Dardozzi's memory problems were "consistent with only moderate difficulties, even while high on marijuana." *Id*.

Aside from this solitary reference to moderate difficulties with persistence, concentration or pace, the ALJ provides a lengthy account of evidence that negates any limitations in Ms. Dardozzi's ability to sustain concentration. For example, the ALJ cited a March, 2013 neurological examination where Ms. Dardozzi presented "alert and oriented," with "memory… intact," and exhibited "a normal attention span and normal concentration." (Tr. 21). During the same examination, Ms. Dardozzi reported her "stress, anxiety and depression … greatly improved." *Id*. And where Ms. Dardozzi's treating physician, Chandre LaCount, D.O., opined that Ms. Dardozzi's "symptoms would cause substantial restrictions in her capacity for sustained mental alertness, concentration, and persistence in carrying out simply job duties," the ALJ assigned this opinion very little weight because it was inconsistent with the record evidence as a whole and likely "nothing more than a recitation of [Ms. Dardozzi's] subjective allegations." *Id*. The ALJ also gave little or no weight to similar concentration, persistence, and pace opinions offered by Ms. Dardozzi's treating therapist, Beth Katz, LCSWC, in May, 2014 for the same reasons. (Tr. 22). Indeed, as to Ms. Katz's opinion, the ALJ elaborated that Ms. Dardozzi "has recently been noted to be *fully oriented and have no deficits in attention and concentration*. The only evidence of any deficit in attention and concentration is the psychological consultative examination to which the claimant showed up high on marijuana." (Tr. 22-23) (emphasis added).

It is evident from the ALJ's discussion of concentration, persistence, and pace that Ms. Dardozzi only exhibited deficits in these areas when high on marijuana. (Tr. 16, 22-23). The record evidence supports, and the ALJ rightly concludes, that Ms. Dardozzi has "no deficits in attention and concentration" *except* when high on marijuana. (Tr. 22-23). Admittedly, the ALJ's apparent finding of "moderate difficulties" at Step Three inspired the parties' confusion. *See* (Tr. 18). However, the ALJ's reasoning and supporting evidence, as well as the ALJ's statements indicates that the ALJ believes that Ms. Dardozzi had no difficulties in persistence, concentration, or pace, when abstaining from marijuana. Accordingly, the ALJ was under no obligation to account for such difficulties in her analysis. Thus, I find that there was no violation of *Mascio*.

    II.    **Function-by-Function Assessment of Mental RFC**

Ms. Dardozzi argues that the ALJ did not account for her severe mental impairment of depressive disorder at steps four and five by failing to perform a function-by-function assessment of her mental RFC. Pl.'s Mot. 22-25. I disagree. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence..." SSR 96-8p, 1996 WL 374184, at *7. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. Here, the ALJ provided a narrative discussion of the medical and non-medical evidence. See (Tr. 17-23). The ALJ cited a March, 2013 neurological examination where Ms. Dardozzi presented a "normal attention span and normal concentration" and reported that "her stress, anxiety and depression were greatly improved." (Tr. 21). The ALJ also summarized a May 22, 2014 Medical Assessment Report by Ms. Katz:

> Ms. Katz opined that the claimant would experience a substantial loss of ability to understand, remember and carry out simple instructions in a competitive environment. Ms. Katz further opined that the claimant would experience a substantial loss of ability to respond appropriately to supervision, co-workers and usual work situations in a competitive environment. Ms. Katz opined that the claimant would experience a substantial loss of ability to deal with changes in a routine work setting in a competitive environment. Ms. Katz stated that the claimant has decreased tolerance, is easily agitated, is very irritable, and has memory loss and problems with concentration.

(Tr. 22). The ALJ decided, however, to give this opinion very little weight because it was inconsistent with recent treatment records describing Ms. Katz as "fully oriented and hav[ing] no deficits in attention and concentration. The only evidence of any deficit in attention and concentration is the [2012] psychological consultative examination to which the claimant showed up high on marijuana." (Tr. 23). The ALJ similarly discounted Ms. Katz's May 14, 2014 Medical Assessment Report and Dr. LaCount's August, 2013 Medical Assessment Report, both of which found that Ms. Dardozzi's "symptoms would cause substantial restrictions in her

capacity for sustained mental alertness, concentration, and persistence in carrying out simple job duties," because they appeared "to be nothing more than a recitation of the claimant's subjective allegations." (Tr. 21-22).

The above narrative, coupled with the ALJ's subsequent conclusory statements regarding Ms. Dardozzi's mental RFC, sufficiently constitute the function-by-function assessment required by SSR 96-8p. Therefore, I do not find remand on this point necessary.

### III. Vocational Expert Hypotheticals

Ms. Dardozzi also argues that the ALJ failed to include various physical and mental limitations in her questions to the VE. Pl.'s Mot. 25-29. As an initial matter, an ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations. *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). Likewise, a hypothetical question is unimpeachable if it adequately reflects the RFC for which the ALJ had sufficient evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

In this case, the ALJ framed a hypothetical based on the RFC "limited to light work which requires her to stand and or walk for a total of six hours of an eight hour workday … [and] sit for a total of six hours of an eight hour workday." (Tr. 43). In response, the VE stated that Ms. Dardozzi could perform several "light, [] unskilled, SVP 2" jobs existing in the national economy. (Tr. 43-44). The ALJ then asked a second hypothetical that questioned whether the VE's testimony changed when the individual is limited to unskilled work and the exertional level is sedentary." (Tr. 44). In response to the second hypothetical, the VE stated that such a person could still perform several jobs existing in the national economy. (Tr. 44-45). Ms. Dardozzi contends that the ALJ improperly failed to include weight-bearing and postural limitations as to Ms. Dardozzi's physical RFC and mental limitations as to Ms. Dardozzi's mental RFC.

As discussed above, the ALJ properly assessed and failed to find any limitations to Ms. Dardozzi's mental RFC stemming from her depressive disorder. As such, omitting mental limitations from the VE hypotheticals was not improper. *See Copeland,* 861 F.2d at 540-41. As to the physical RFC, the Commissioner rightly concludes that "the ALJ incorporated all of Ms. Dardozzi's *credible* limitations in her hypothetical questions." Def.'s Mot. 13 (emphasis added). Indeed, after evaluating all of the evidence, including Ms. Dardozzi's testimony as to her physical limitations, the ALJ concluded that Ms. Dardozzi's "statements concerning the intensity, persistence and limiting effects of [her medically determinable impairments] are not entirely credible for the reasons explained in this decision." (Tr. 18). The ALJ goes on to discount Ms. Dardozzi's alleged "extent of pain," and "limitations" as inconsistent with other statements made by Ms. Dardozzi to medical providers and family members, as well as unsupported by the treatment records. *Id.* The ALJ also cited opinion evidence demonstrating that Ms. Dardozzi retains a full range of motion despite her severe physical impairments of degenerative disc disease and status post lumbar spine fusion, including a 2007 examination by Jean-Paul Wolinsky, M.D. describing Ms. Dardozzi as "ambulating independently, without an

*Dardozzi v. Colvin*
Civil No. SAG-16-20
October 18, 2016
Page 6

assistive device" and possessing "full range of motion;" a 2009 evaluation at Rosen-Hoffberg Rehabilitation and Pain Management reporting that Ms. Dardozzi could "squat and arise … [although her] [r]ange of motion of the lumbar spine was limited;" and a February, 2012 consultative examination by Douglas Wright, M.D. noting that Ms. Dardozzi "has a normal gait," "does not use an assistive device," was "'quite animated and athletic'," and "had full range of motion of the cervical and lumbar spine [including being] able to touch her toes." (Tr. 19-20). The ALJ concludes this narrative by noting that Ms. Dardozzi's "X-rays and a MRI of her lumber spine, taken in January 2013, showed no significant new findings since January 2009 imaging. Furthermore, examinations performed in 2014 show full strength in her lower extremities." (Tr. 20) (citations omitted). Moreover, the ALJ gave little or no weight to opinion evidence assigning significant restrictions to Ms. Dardozzi's abilities to sit, stand, walk, lift, bend, crouch, climb, and stoop while supplying sound reasoning for doing so. (Tr. 21-22). Despite these findings, the ALJ limited Ms. Dardozzi to light and unskilled work, accounting for her severe physical and mental impairments, respectively. The ALJ's hypotheticals are supported by ample evidence in the record, and are therefore proper. As a result, remand on this issue is unwarranted.

Lastly, Ms. Dardozzi claims that the ALJ erred by not resolving a conflict between the VE's testimony and the Dictionary of Occupational Titles ("D.O.T."). Pl.'s Mot. 27 (citing *Henderson v. Colvin*, 643 F. App'x 273 (4th Cir. 2016) (unpublished)). In *Henderson*, the Fourth Circuit found a conflict between "an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." 643, F. App'x. at 277. Reading *Henderson* broadly puts it in conflict with existing case law, which has repeatedly found that occupations with a reasoning level of 2 are consistent with a claimant's ability to perform simple, routine work. *See, e.g.*, *Michel v. Comm'r Soc. Sec. Admin.*, No. SAG-13-2311, 2014 WL 2565900, at *3 (D. Md. June 5, 2014); *Blum v. Comm'r Soc. Sec. Admin.*, No. SAG-12-1833, 2013 WL 2902682, at *3 (D. Md. June 11, 2013); *see also Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no inconsistency between a job with a reasoning level of three and a hypothetical individual limited to "simple, concrete instructions"); *Hacket v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"). Ultimately, *Henderson* is distinguishable from the instant case because the ALJ did not limit Ms. Dardozzi's RFC to "one-to-two step instructions," but rather to "unskilled work." Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568. Unskilled work, then, is tantamount to simple, routine tasks. Consistent with the precedent cited above, "unskilled work" is consistent with a reasoning level of SVP 2. As an unpublished decision creating non-binding precedent, *Henderson*, narrowly construed to suggest a conflict between the D.O.T. definition of SVP 2 and RFCs limited to "one-to-two step instructions," does not dictate a remand in this case.

*Dardozzi v. Colvin*
Civil No. SAG-16-20
October 18, 2016
Page 7

### IV. Evaluation of Medical Opinion Evidence

Ms. Dardozzi contends that the ALJ assigned inadequate weight to the opinion of Ms. Dardozzi's treating physician, Dr. LaCount. Pl.'s Mot. 29-31. A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as, the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). The ALJ must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, 1996 WL 374180 at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Contrary to Ms. Dardozzi's assertion, the ALJ properly evaluated Dr. LaCount's opinion. The ALJ assigned Dr. LaCount's opinion "little weight" because it was inconsistent with the medical evidence and unsupported by the objective record. (Tr. 21-22). Specifically, the ALJ noted that, contrary to Dr. LaCount's statements that Ms. Dardozzi "would need to lie down for four hours out of an eight hour workday," "on examination the claimant has from mild to no limitation in range of motion of the lumbar spine, … full strength of the upper extremeties, and her imaging studies have remained the same for several years, showing only mild degenerative changes subsequent to her surgery." (Tr. 22). The ALJ also expressed concern that Dr. LaCount's opinion "appears to be nothing more than a recitation of the claimant's subjective allegations," pointing to Dr. LaCount paraphrasing Ms. Dardozzi's comments during a medical examination regarding her ability to sit and stand for lengthy periods. *Id.* These inconsistencies provide sufficient justification for the ALJ's decision to accord only "little weight" to Dr. LaCount's opinion.

### V. Credibility

Finally, Ms. Dardozzi maintains that the ALJ failed to properly evaluate her credibility. Pl.'s Mot. 32. In particular, she believes the ALJ erred in assessing her pain. *Id.* Although Ms. Dardozzi attempts to boil the ALJ's position down to discrediting her pain on the basis of taking care of her daughter and having sex a couple of times a day, the ALJ actually provides numerous specific examples where Ms. Dardozzi's allegations and statements about her symptoms are not supported or contradicted by the record evidence. Pl.'s Mot. 32. (Tr. 18.) The examples include inconsistencies between Ms. Dardozzi's testimony about her bed time and length of sleep at night due to her impairments versus statements to a consultative examiner about the same issue;

*Dardozzi v. Colvin*
Civil No. SAG-16-20
October 18, 2016
Page 8

testimony about concentration problems stemming from her injuries and medications prompting her to leave a job versus statements made in 2007 to her treating neurologist that "she quit her job due to workplace-related issues unrelated to her pain;" and testimony that she is in constant pain without relief versus statements made during a 2014 neurological examination that "she was happy with her pain management regimen and was experiencing no pain." (Tr. 18). The ALJ also assessed Ms. Dardozzi's credibility based on her in-court demeanor and testimony during her June, 2014 hearing. The ALJ observed, for instance, that Ms. Dardozzi appeared uncomfortable wearing a back brace she testified to having worn for four years. *Id*. Nor could the ALJ find a prescription for the back brace or support in the record to reflect that Ms. Dardozzi's treating health care providers or consultative examiners knew about the back brace; indeed, a May, 2014 Medical Assessment Report noted that Ms. Dardozzi did not use any assistive device. *Id.* The ALJ's detailed evaluation of the record evidence against Ms. Dardozzi's inconsistent and unsupported statements over the years regarding her pain and other symptoms amply supports the ALJ's conclusion that Ms. Dardozzi's alleged limitations were not entirely credible. Thus, contrary to Ms. Dardozzi's argument, the ALJ properly evaluated Ms. Dardozzi's credibility, and supported her findings with substantial evidence.

For the reasons set forth above, Ms. Dardozzi's Motion for Summary Judgment (ECF No. 18) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

        Sincerely yours,

        /s/

        Stephanie A. Gallagher
        United States Magistrate Judge